UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LEON CAPITAL GROUP, LLC, <br><br> Defendant. | Case No. 21-cv-2227 (CRC) |

## MEMORANDUM OPINION & ORDER

Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar") are suing Leon Capital Group, LLC ("Leon Capital") for its alleged unauthorized use of CoStar's commercial real estate database in breach of various agreements. Previously, the Court mostly denied Leon Capital's initial motion to dismiss but dismissed as moot CoStar's claim for breach of the licensing agreement between the parties because Leon Capital had paid the full amount due under the agreement after CoStar filed suit. See Mem. Op. & Order, ECF No. 19 (June 7, 2022). CoStar amended its complaint to seek injunctive relief and damages for that alleged breach, which rehabilitated the claim. Presently before the Court is Leon Capital's renewed motion to dismiss some of the claims in CoStar's amended complaint. Specifically, the motion argues that: (1) CoStar cannot establish a breach of the relevant contractual provisions because Leon Capital is not a competitor of CoStar, (2) CoStar cannot seek injunctive relief for the alleged breach of the licensing agreement because it has been terminated, and (3) CoStar has not alleged the type of loss that is required to support a civil action under the Computer Fraud and Abuse Act ("CFAA"). Finding that only the third jab lands, the Court will grant the motion in part and deny it in part.

I.  **Background**

The Court has already detailed the factual background of this case in its prior opinion and need only provide a few highlights here. Mem. Op. at 1–4. CoStar operates "the nation's most comprehensive commercial real estate information database," which it licenses to users for a monthly fee. Am. Compl. ¶¶ 1, 20. Defendant Leon Capital, a Texas-based real estate investment and development firm, held a license to use the database until CoStar terminated it because, in CoStar's view, Leon Capital was acting as a competitor in violation of the agreement. Id. ¶¶ 3, 11, 54; see Am. Compl., Ex. A at 3 ("License Agreement") ("Licensee shall not . . . access or use the Licensed Product if Licensee is a direct or indirect competitor of CoStar[.]"). CoStar alleges that Leon Capital continued its transgressions after the agreement was terminated by accessing CoStar's database without proper authorization in violation of the database's Terms of Use. Am. Compl. ¶¶ 99–103. Specifically, CoStar alleges that Leon Capital employees used log-in credentials from previous employers to access CoStar's products after Leon Capital's contract was terminated, even though the Terms of Use requires that users are employed by a licensee and prohibits competitors from accessing the database. Id. ¶¶ 55–63, 67–74; see Am. Compl., Ex. B at 3, 6 ("Terms of Use"). CoStar insists that Leon Capital has continued its unauthorized access of CoStar data even after this case was filed. Am. Compl. ¶¶ 4–5, 72–74.

CoStar's original complaint sought payment of the amount due under the termination clause of the license agreement, as well as damages and injunctive relief for the alleged breach of the Terms of Use for CoStar's database. Compl. ¶¶ 78–98. In the alternative, CoStar pled fraud and unjust enrichment claims for Leon Capital's purported continued misuse of the data. Id.

¶¶ 107–123. Finally, CoStar alleged that Leon Capital's unauthorized use of its data violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Compl. ¶¶ 99–106.

Leon Capital moved to dismiss the complaint in October 2021. Mot. Dismiss, ECF No. 12. The Court denied most of Leon Capital's motion but dismissed CoStar's claim for breach of the licensing agreement as moot because Leon Capital had subsequently paid the contract fee, which was the only relief sought. Mem. Op. at 5–7. Following the Court's ruling that the license agreement claim was moot, CoStar moved to amend the complaint to seek damages and injunctive relief for that claim. Am. Compl. ¶¶ 91–95. The Court granted the motion. Min. Order (Oct. 26, 2022). Leon Capital now moves for partial dismissal of the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Renewed Mot. Dismiss, ECF No. 29.

## II.  Legal Standards

Rule 12(b)(6) requires dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion, the court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A court "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation and quotation omitted). Although a complaint need not provide "detailed factual allegations" to withstand a 12(b)(6) motion, it must offer "more than labels and conclusions." Twombly, 550 U.S. at 555. "In

determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006).

**III. Analysis**

Leon Capital raises three challenges to the amended complaint, two of which retread ground already walked in the Court's prior opinion. First, Leon Capital insists that it cannot have breached the license agreement because, contrary to the Court's earlier ruling, it is not a competitor of CoStar, as evidenced by the fact that CoStar did not cite Leon Capital as a competitor in its Form 10-K filing with the SEC. Second, Leon Capital maintains that CoStar cannot seek injunctive relief for breach of the license agreement because that agreement has already been terminated. Lastly, Leon Capital asserts that CoStar has failed to plead a cognizable loss under the CFAA. As explained below, the Court will grant Leon Capital's renewed motion to dismiss as to the CFAA claim only.

    A. Leon Capital as a Competitor

According to CoStar, Leon Capital breached the licensing agreement by accessing CoStar's database as a competitor. In its prior opinion, the Court found that "CoStar has at least plausibly alleged some sort of indirect competitor relationship" with Leon Capital based on its alleged direct investment and operational relationship with the commercial real estate exchange CREXi, which is a direct competitor of CoStar. Mem. Op. at 10–12. Leon Capital attempts to rebut that conclusion by asking the Court to take judicial notice of the fact that CoStar does not

list Leon Capital as a competitor in its Form 10-K filing with the SEC.  The Court is not convinced.[1]

To start, it is not clear the Court can take judicial notice of CoStar's 10-K to resolve a disputed fact.  See Atchley v. AstraZeneca UK Ltd., 22 F.4th 204, 229 (D.C. Cir. 2022) (declining to take judicial notice of "documents reciting complex facts that appear subject to dispute"); Genasys Inc. v. Vector Acoustics, LLC, No. 22-CV-152 TWR, 2022 WL 16577872, at *6 (S.D. Cal. Nov. 1, 2022) ("The truth of the [Form 10-K's] content, and the inferences properly drawn from them, however, is not a proper subject of judicial notice under Rule 201.").  Regardless, the Court finds Leon Capital's theory unpersuasive.  It is true that CoStar does not list Leon Capital nor "private investment firms" as competitors in its 10-K.  Renewed Mot. Dismiss, Ex. 1 at 25–27 ("CoStar Form 10-K").  But CoStar does expressly list CREXi as a competitor twice, id., and the Court has already found a sufficiently alleged relationship exists there to plausibly support a finding that Leon Capital was an indirect competitor of CoStar, Mem. Op. at 10–12.  At most, the 10-K might raise a potential factual dispute not fit for resolution at this stage of the litigation.  The Court declines Leon Capital's invitation to extrapolate further.

B.  Injunctive Relief for Alleged Breach of the Licensing Agreement

In the alternative, Leon Capital urges the Court to reject CoStar's request for injunctive relief for the alleged breach of the license agreement because "no imminent and irreparable harm

---

[1] As the Court noted in its prior opinion, CoStar's licensing agreement and the terms of use for its database have similar, but distinct, prohibitions against use by competitors.  Mem. Op. at 10 n.2 ("The Court sees only one difference: evaluating any alleged violation of the Terms and Conditions' termination clause would require deciding whether CoStar believed in good faith that Leon Capital was a competitor—not whether it in fact competed.").  Leon Capital's argument here is unpersuasive against either standard.

can flow from an agreement which has been admittedly terminated[.]" Renewed Mot. Dismiss at 7. But the Court does not read CoStar's request for injunctive relief as only seeking to prevent a future breach of the terminated agreement. Rather, Costar also "is seeking an injunction to stop Leon Capital from making use of the content, including data and copyrighted images, it unlawfully obtained from CoStar's database prior to May 2021 in violation of the terms of the License Agreement." Opp'n at 15. Admittedly, the amended complaint does not articulate the desired relief as clearly. But the amended complaint does allege that Leon Capital accessed and downloaded content in breach of the licensing agreement, that the agreement itself acknowledges that breaches could result in "irreparable harm" necessitating injunctive relief, and that Leon Capital continues "to engage in misconduct." See Am. Compl. ¶¶ 92–94; License Agreement at 12. It is plausible, and Leon Capital does not dispute, that the continued use of data collected in violation of the License Agreement could constitute irreparable harm. Accordingly, the Court will not cabin the relief that CoStar seeks.[2]

    C. Computer Fraud and Abuse Act

Lastly, the Court turns to CoStar's statutory claim under the CFAA. The CFAA authorizes civil suits as follows:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).

18 U.S.C. § 1030(g). The five enumerated circumstances where a civil suit may be brought are:

---

[2] Even if the Court agreed with Leon Capital that CoStar's request for injunctive relief is improper, the Court would not dismiss CoStar's claim for breach of the licensing agreement because the amended complaint also includes a request for damages beyond the accelerated licensing payments already received. Am. Compl. ¶¶ 91–95; Min. Order (Oct. 26, 2022).

(I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(III) physical injury to any person;

(IV) a threat to public health or safety;

(V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security.

Id. § 1030(c)(4)(A)(i). Only the first circumstance concerning losses totaling $5,000 in a 1-year period is relevant here. See Am. Compl. ¶ 114 ("CoStar has suffered over $5,000 worth of damages and losses over a one-year period.").

The CFAA defines "loss" as including "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). "Damage," in turn, means "any impairment to the integrity or availability of data, a program, a system, or information." Id. § 1030(e)(8). The Supreme Court has explained that, at bottom, the CFAA is concerned with "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data" and "preventing the typical consequences of hacking." Van Buren v. United States, 141 S. Ct. 1648, 1659–60 (2021) (internal quotation omitted).

In its earlier opinion, the Court upheld the CFAA claim against Leon Capital's challenge that CoStar's database was not accessed "without authorization." In addition, the Court independently raised the statute's loss requirement and noted that only technological harms, such

as damage to CoStar's computer system or data, could satisfy the threshold. Mem. Op. at 18–19. The Court concluded that CoStar had provided sufficient, albeit brief, allegations in the complaint to allege a CFAA claim, specifically that Leon Capital's unauthorized access "impaired and corrupted CoStar's efforts to measure and analyze legitimate subscriber traffic." Id. (quoting Compl. ¶ 105); see also Am. Compl. ¶ 114.

Leon Capital now urges the Court to take a second bite at the loss apple, asserting that CoStar has failed to allege a cognizable loss under the CFAA. After further reflection, and with the benefit of additional briefing and caselaw cited by neither party, the Court belatedly agrees that CoStar has not sufficiently alleged a loss under the CFAA.

As the Court reads the statute, CoStar can sustain its civil CFAA claim by alleging either that an "interruption of service" led to losses or that it expended resources responding to "technological harms" caused by Leon Capital's unauthorized use. See 18 U.S.C. § 1030(e)(11); Van Buren 141 S. Ct. at 1659–60 (internal quotation omitted); Psychas v. Dist. Dep't of Transp., No. CV 18-0081 (ABJ), 2019 WL 4644503, at *9–11 (D.D.C. Sept. 24, 2019) ("Many courts agree that loss refers only to the costs associated with responding to a violation or restoring the information that was damaged or any costs incurred because of an interruption of services. The Court will apply the interpretation of loss set out in these cases[.]" (footnote omitted)). CoStar alleges that "Leon Capital's unauthorized access consumed time and money spent identifying, investigating, and attempting to block and otherwise respond to Leon Capital's unauthorized access" and that "an investigation of the unauthorized actions taken by Leon Capital" was required, "including a review of the resources utilized or diverted by Leon Capital, the data downloaded by Leon Capital, and any other damage done to CoStar's computer systems." Am. Compl. ¶ 114. CoStar also alleges that "Leon Capital's unauthorized access has impaired and

corrupted CoStar's efforts to measure and analyze legitimate subscriber traffic" which "undermined the soundness and therefore the value of those data and analyses, which are used for multiple business purposes."  Id.  These allegations fail to satisfy either avenue for a civil suit under the CFAA.

To start, CoStar does not allege that it suffered an "interruption of service."  Nor could it, as CoStar's database remained available to other subscribers regardless of whether Leon Capital accessed materials through deceptive means.  Further, CoStar stops short of alleging that Leon Capital's unauthorized use resulted in technological harm to CoStar's system or its real estate data.  Although Leon Capital may (or may not) have used unauthorized means to access CoStar's data, Leon Capital is accused of using the database in its intended fashion.  Absent from the complaint are any allegations that Leon Capital altered the data, corrupted any files, diminished the database's performance, or restricted access to the platform for other users.  Accordingly, CoStar cannot claim a loss based on the need to conduct a damage assessment or data restoration efforts in response to Leon Capital's customary, but perhaps unauthorized, use of the database.

For an analogy, imagine a moviegoer sneaking into a film screening without a ticket.  While the viewer's access to the movie is certainly unauthorized, it can hardly be described as causing technological harm to the film or the theater.  Had he snuck into the projection booth instead, a damage assessment and restoration efforts may be warranted.  Here, Leon Capital is alleged only to have entered the proverbial theater without a ticket, so CoStar's claimed need to review "any other damage done to CoStar's computer systems" is tangential to a CFAA claim.

In an apparent effort to shoehorn its claim into the CFAA's loss definition, CoStar asserts that Leon Capital's unauthorized access has impaired the integrity of its subscriber traffic data.  See Opp'n at 13.  In other words, CoStar suggests that Leon Capitol's incursions have made it

more difficult to accurately track licensed use of the database, which it does for a range of "business purposes." Am. Compl. ¶ 114. But CoStar offers no support for the notion that the alleged injury to its "business purposes" caused by the inadvertent creation of misleading subscriber traffic data constitutes a technological harm covered by the statute. Id. Such second-order effects that do not harm CoStar's computer system or the underlying data being accessed are not the "typical consequences of hacking." Cf. Van Buren, 141 S. Ct. at 1659–60 (internal quotation omitted).

And even if such a loss were cognizable under the CFAA, CoStar has not plausibly alleged it. CoStar's barebone assertions fail to explain how a single company's unauthorized use could have a meaningful influence on the subscriber traffic data of "the most comprehensive database of commercial real estate information in the world," which includes "millions of data changes to [its] database each day." Am. Compl. ¶¶ 14–15. Further, CoStar provides no detail as to what specific "business purposes" are thwarted by the misleading subscriber data nor does it plead that the corrupted subscriber traffic data resulted in a $5,000 loss, as required by the statute. For all those reasons, and despite the Court's prior conclusion to the contrary, CoStar has failed to allege a cognizable loss under the CFAA.

D. Diversity Jurisdiction

As a final point, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists[.]" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Because the Court did dismiss CoStar's CFAA claim, it no longer has federal question jurisdiction over the case. The Court may still have diversity jurisdiction, but it must ensure that there is "complete diversity" between the parties, meaning that "each defendant is a citizen of a different State from each plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis

omitted).  On initial review, the complete diversity requirement appears satisfied: CoStar is incorporated in Delaware with its nerve center in the District of Columbia and Leon Capital is allegedly incorporated and operating in Texas.  Am. Compl. ¶¶ 9–11.  The wrinkle here is that Leon Capital is a limited liability corporation and the citizenship of each of its constituent individual members is relevant to the analysis.  See Laroach v. BridgePoint Healthcare, LLC, No. 18-cv-1096 (CRC), 2018 WL 6434768 (D.D.C. Dec. 7, 2018).  On the current record, the Court cannot determine the citizenship of Leon Capital's members.  Accordingly, the Court directs Leon Capital to file a notice indicating the citizenship of its members by August 17, 2023.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Leon Capital's [29] Renewed Motion to Dismiss is GRANTED in part and DENIED in part. CoStar's CFAA claim is hereby dismissed, while the remainder of the amended complaint may proceed.  It is further

**ORDERED** that Leon Capital file a notice of the citizenship of its constituent members by August 17, 2023.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 10, 2023