**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COSTAR GROUP, INC., *et al*, <br><br>   Plaintiffs, <br> v. <br> TILTBOT, LLC, <br><br>   Defendant. | Case No. 1:21-cv-02227-CRC |

## [PROPOSED] JUDGMENT AND PERMANENT INJUNCTION

Pursuant to the stipulation ("Stipulation") of Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "Plaintiffs" or "CoStar"), and Defendant Tiltbot, LLC ("Defendant", and with CoStar, "Stipulating Parties" and each, a "Stipulating Party"), this Court hereby ORDERS that final judgment shall be and is hereby entered in this action as follows:

### A.   FACTUAL FINDINGS

The Court finds the following:

1. The Court has personal and subject matter jurisdiction over the above-captioned Action and the Stipulating Parties thereto.

2. Venue is proper in the District of Columbia.

3. The operative complaint in the Action states a claim on which relief may be granted against Defendant.

4. The Stipulating Parties waive all rights to an appeal or to otherwise challenge or contest the validity of this Stipulated Judgment.

5. Entry of this Stipulated Judgment and Permanent Injunction is in the public interest.

1

6. Defendant's affiliate was a subscriber to CoStar's commercial real estate information database ("Database").

7. Defendant's affiliate's subscription license to the Database terminated no later than May 24, 2021.

8. Defendant separately agreed to the Database's terms and conditions ("Terms and Conditions"), through the actions of an employee who was working on Defendant's and Defendant's affiliate's behalf and within the scope of the employee's employment with Defendant.

9. In June 2021, Defendant accessed the Database without authorization on one (1) occasion and exported one (1) record. That access and export breached the Terms and Conditions.

10. CoStar invested substantial time and resources to research, collect, verify, and/or curate the information published in the record accessed by Defendant in June 2021, as well as to ensure against unauthorized access and export of that record.

11. As a result of Defendant's unauthorized access of the Database, CoStar has been forced to expend additional time and resources, including, but not limited to, investigating Defendant's activities and attempting to prevent appropriation by technological means.

## B. <u>JUDGMENT</u>

1. Judgment is hereby entered in favor of Plaintiffs and against Defendant on Plaintiffs' claims of breach of contract.

2. The Court finds that Plaintiffs were damaged in the following amounts and awards these amounts to Plaintiffs:

    a. $10,000 relating to Defendant's breach of contract stemming from one (1) instance of unauthorized access of the Database in June 2021, in violation

of the prohibition in the CoStar Terms and Conditions against passcode sharing and prohibited uses.

  b. $50,000 relating to Defendant's breach of contract stemming from Defendant's unauthorized export from the Database in June 2021 of one (1) record and representing direct damages for the value of the CoStar records extracted from the Database in connection with the breach of contract.

3. In addition, the Court awards to Plaintiffs $40,000 in attorneys' fees and costs due under the Terms and Conditions and related to the above-described breaches of contract.

4. The damages awarded in Paragraphs B.2 and B.3 above shall be payable by Defendant to Plaintiffs within ten (10) calendar days after the entry of this Judgment ("Entry Date").

5. Except as set forth herein, the Parties shall otherwise each be responsible for their own attorneys' fees, costs, and expenses incurred in connection with the Action by them prior to Entry Date.

## C. **PERMANENT INJUNCTION**

Pursuant to the stipulation of Plaintiffs and Defendant, and for good cause shown, this Court hereby ORDERS that a permanent injunction ("Permanent Injunction") is entered as follows:

1. Defendant and its employees, officers, affiliates, subsidiaries, and agents are hereby permanently enjoined from accessing the Database (as well as exporting any records therefrom) without the written consent of CoStar.[2]

---

[2] As used herein, affiliate and subsidiary do not refer to publicly traded entities in which Defendant owns less than a majority interest. For the avoidance of doubt, and notwithstanding anything in this footnote and Paragraph C.1, Defendant's affiliate, Defendant Leon Capital Group, LLC ("Leon Capital"), has agreed in the Stipulation to be bound by this Permanent Injunction. The disposition of CoStar's claims against Leon Capital will be addressed in a separate order pursuant

2.     The following "Notice and Cure Protocol" shall apply to violations of this Permanent Injunction. Should CoStar obtain knowledge of any violation of the Permanent Injunction, CoStar shall give written notice to Defendant and its counsel within ten (10) calendar days of CoStar obtaining knowledge of such violation. Defendant shall, within ten (10) calendar days of receiving CoStar's notification:

    a. In the case of unauthorized access of Database: confirm that it has taken commercially reasonable steps to identify any individual who accessed the Database without authorization, provide the identity of the individual (and any credentials) to CoStar, and block the individual's further access to the Database; or

    b. In the case of unauthorized export of Database record(s): confirm that it has taken commercially reasonable steps to return or destroy all such exported Database records.

3.     Should CoStar satisfy the requirements of the Notice and Cure Protocol, and should Defendant fail to satisfy the requirements of the Notice and Cure Protocol, Defendant shall be liable for damages, and shall consent to entry of judgment (upon application to this Court by Plaintiffs) for such damages, which shall be calculated by adding the sum of the applicable dollar amount listed below (collectively, "Further Damages"):

    a. $10,000 per instance of unauthorized access of the Database by Defendant; and

    b. $50,000 per record exported without authorization by Defendant.

---

to the Stipulation. Pursuant to that order, the Court will retain jurisdiction over Leon Capital with respect to the enforcement of the Stipulation and, in particular, Leon Capital's agreement to be bound by the Permanent Injunction. As a result, Leon Capital shall also be bound and enjoined by the Permanent Injunction.

4. This Permanent Injunction does not create any independent duties other than those previously specified.

5. This Court shall retain jurisdiction of this matter in law and equity for purposes of enforcing and/or adjudicating claims of violations of this Judgment and Permanent Injunction. Any such matters shall be raised by noticed motion. The parties irrevocably and fully waive and relinquish any argument that venue or jurisdiction by the Court is improper or inconvenient.

6. The parties irrevocably and fully waive any and all right to appeal the Judgment and Permanent Injunction, to have it vacated or set aside, to seek or obtain a new trial thereon, or otherwise to attack in any way, directly or collaterally, its validity or enforceability.

7. Defendant shall give notice of this Judgment and Permanent Injunction to each of its officers, directors, and employees, and request adherence to the terms of this Permanent Injunction.

8. This Permanent Injunction enjoins the conduct of Defendant (and related entities specified in Paragraph C.1) wherever they may be found, including, without limitation, outside of the United States.

9. Plaintiffs shall not be required to post any bond or security, and Defendant permanently, irrevocably, and fully waives any right to request a bond or any other security.

IT IS SO ORDERED

Dated: ____                                  _____
                                             HON. CHRISTOPHER R. COOPER
                                             United States District Judge